| STATE OF NORTH CAROLINA | File No. 18 CVS 1488 |
|---|---|
| ALAMANCE County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| Name Of Plaintiff<br>DENC, LLC | |
|---|---|
| Address<br>c/o Gregg McDougal/ Shanahan McDougal, PLLC | **CIVIL SUMMONS**<br>☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| City, State, Zip<br>128 E. Hargett Street, Third Floor, Raleigh,   NC    27601 | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s)<br>PHILADELPHIA INDEMNITY INSURANCE COMPANY and<br>TOKIO MARINE NORTH AMERICA, INC. | Date Original Summons Issued |
| | Date(s) Subsequent Summons(es) Issued |

To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1<br>Philadelphia Indemnity Insurance Company<br>c/o Mike Causey, Insurance Commissioner of NC Dept. of Insurance<br>1201 Mail Service Center<br>Raleigh, NC 27699-1201 | Name And Address Of Defendant 2<br>Tokio Marine North America, Inc.<br>c/o Corporation Service Company-Registered Agent<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
|---|---|

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)<br>Gregg McDougal<br>Shanahan McDougal, PLLC<br>128 E. Hargett Street, Third Floor<br>Raleigh, NC 27601 | Date Issued<br>07-30-18 | Time<br>1:01  ☐ AM  ☒ PM |
|---|---|---|
| | Signature<br>Rebecca Mullen<br>☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time  ☐ AM  ☐ PM |
|---|---|---|
| | Signature<br>☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM  ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM  ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

| STATE OF NORTH CAROLINA | THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| COUNTY OF ALAMANCE | 18 CVS 1488 |

FILED
2018 JUL 30 P 1:01
ALAMANCE CO., C.S.C.
By: /s/

| DENC, LLC, | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) |
| v. | ) COMPLAINT |
| | ) |
| PHILADELPHIA INDEMNITY | ) |
| INSURANCE COMPANY, TOKIO | ) |
| MARINE NORTH AMERICA, INC., | ) |
| D/B/A PHILADELPHIA INSURANCE | ) |
| COMPANIES, | ) |
| | ) |
| Defendants. | ) |

NOW COMES Plaintiff DENC, LLC ("Plaintiff" or "DENC") and complaining of Defendant Philadelphia Indemnity Insurance Company and Defendant Tokio Marine North America, Inc. (collectively referred to as "Defendant"), alleges and says as follows:

## INTRODUCTION

1. This lawsuit involves an insurance coverage dispute arising from the collapse of a breezeway located in a student-housing apartment complex near Elon University. DENC timely submitted a claim seeking to recover damages under an insurance policy issued by Defendant. Although the policy plainly provides coverage for DENC's claim, Defendant has wrongfully denied coverage, violating its policy obligations, legal duties, and applicable law.

## PARTIES

2. Plaintiff DENC, LLC, is a Delaware limited liability company doing

1

business in North Carolina as DENC I, LLC, with its principal office located in Monterey Park, California.

3. Defendant Philadelphia Indemnity Insurance Company is a Pennsylvania insurance corporation with its principal office located in Bala Cynwyd, Pennsylvania, upon information and belief.

4. Defendant Tokio Marine North America, Inc., is a Delaware corporation doing business as "Philadelphia Insurance Companies," with its principal office located in Bala Cynwyd, Pennsylvania, upon information and belief. "Philadelphia Insurance Companies" appears on the front page, the declarations page, and other pages throughout the subject insurance policy, and the relevant correspondence at issue here has all been sent on "Philadelphia Insurance Companies" letterhead.

5. Defendant Philadelphia Indemnity Insurance Company is licensed under Chapter 58 of the North Carolina General Statutes to transact business in North Carolina, is authorized to conduct business in North Carolina, and actually does conduct business in North Carolina, upon information and belief.

6. Pursuant to N.C. Gen. Stat. § 58-16-30, Defendant Philadelphia Indemnity Insurance Company will be served with legal process by service upon its registered agent in North Carolina and/or upon the North Carolina Insurance Commissioner.

7. Defendant Tokio Marine North America, Inc. will be served with legal process upon its Registered Agent Corporate Service Company located in Wilmington, Delaware.

## JURISDICTION AND VENUE

8. The amount in controversy exceeds Twenty-Five Thousand Dollars and 00/100 ($25,000.00) and, pursuant to N.C. Gen. Stat. § 7A-243, this Court has jurisdiction over the subject matter of this action.

9. This Court has personal jurisdiction over the Defendant pursuant to, *inter alia*, N.C. Gen. Stat. §§ 1-75.4(10), because this action arises out of a contract of insurance that covers property located in North Carolina, because the event out of which the Claim arose occurred within North Carolina, and because the property affected by the event out of which the Claim arose is also located in North Carolina.

10. Defendant has minimum contacts with the State of North Carolina and issues insurance policies to individuals and/or companies that are located in, and transact business in, and own and operate property in North Carolina, upon information and belief.

11. Venue is proper in this Court pursuant to, *inter alia*, N.C. Gen. Stat. §§ 1-79, 1-82.

12. All conditions precedent as to DENC set forth in the applicable insurance contract have been performed or have occurred.

## FACTUAL BACKGROUND

### I. DENC's Property – The Crest at Elon

13. DENC owns an apartment community in Elon, Alamance County, North Carolina, known as The Crest at Elon ("the Crest"), which, upon information and belief, was originally constructed in 2004.

3

14. DENC acquired the Crest in 2013 and, as a part of the transaction, assumed the outstanding mortgage and contracted with the seller for property management services.

15. The Crest comprises four buildings, numbered 2010, 2020, 2030, and 2040. Each building contains rental units, each of which contains four (4) single-occupancy bedrooms, four (4) bathrooms, a kitchen, and a living room (a "Rental Unit"). Each Rental Unit can accommodate four (4) occupants.

16. Building 2020, the building at issue here, is a three-story building. Each story of the building contains four (4) Rental Units. As such, Building 2020 contains a total of twelve (12) Rental Units and has the capacity for forty-eight (48) occupants.

17. Each floor of Building 2020 has a central breezeway, which is the access for the Rental Units and launderette on that floor and above.

18. On or about January 5, 2016, DENC entered into a two-year Master Lease Agreement with Elon University with respect to the Crest for the 2016-2017 and 2017-2018 academic years.

19. On or about July 26, 2017, DENC entered into a second two-year Master Lease Agreement with Elon University with respect to the Crest for the 2018-2019 and 2019-2020 academic years.

## II. DENC's Insurance Policy with Defendant.

20. On or about November 8, 2017, Defendant issued to DENC a general liability and property insurance policy, numbered PHPK1737572 (the "Policy"), for

4

the period of November 25, 2017 to November, 25, 2018.

21. The Policy states limits of insurance that includes a General Aggregate Limit of Two Million Dollars and 00/100 ($2,000,000.00) and an Each Occurrence Limit of One Million Dollars and 00/100 ($1,000,000.00), among others.

22. The Policy covers the "Buildings" described in the Policy Declarations, including Building 2020, and assumes that a loss is covered, unless that loss is caused by a cause that is expressly excluded or limited.

23. The Policy expressly provides coverage for "collapse" in numerous circumstances, including the following which are applicable here.

24. First, as amended by the Endorsement titled "COLLAPSE – EXCLUSION AND ADDITIONAL COVERAGE RE-STATED" (the "Collapse Endorsement"), the CAUSE OF LOSS FORM states that a collapse is covered when caused by "Weight of people or personal property."

25. Second, the Collapse Endorsement states that a collapse is covered when caused by " 'Building' decay that is hidden from view."

26. Third, the Collapse Endorsement states that a collapse is covered when caused by "Use of defective material or methods in construction . . . if the collapse is caused in part by . . . Weight of people."

27. Fourth, the Collapse Endorsement states that a collapse is covered when caused by "Use of defective material or methods in construction . . . if the collapse is caused in part by . . . Building' decay that is hidden from view."

28. The Policy states that Defendant "will pay" for damages including

5

"Business Income" sustained due to the loss and "Extra Expenses" incurred "to avoid or minimize the suspension of business and to continue 'operations', " among others.

### III. The Breezeway Collapse in Building 2020

29. On or about January 14, 2018, the second floor breezeway in Building 2020 (the "Breezeway") collapsed suddenly when a large number of students were congregated on the Breezeway.

30. The collapse rendered not only the Breezeway unusable, but all of Building 2020 unusable for any business purpose.

31. DENC has incurred significant costs to repair the Breezeway and has also lost "Business Income" and incurred "Extra Expenses" and other damages therefrom.

### IV. DENC's Claim to Defendant

32. On or about January 15, 2018, the day after the collapse, DENC notified Defendant of the events at issue and of its loss (the "Claim").

33. On or about January 25, 2018, Defendant approved coverage for DENC in a letter to DENC (the "January 25 Letter"). The January 25 Letter was signed by Ms. Rebecca Wilson-Williams, Senior Claims Examiner for Philadelphia Insurance Companies. Upon information and belief, Ms. Wilson-Williams works in Bala Cynwyd, Pennsylvania, at Defendant's home office. The January 25 Letter expressly stated that Defendant had investigated the Claim and had "issued, or will be issuing payment to you, or on your behalf, for damages or injuries sustained under the above claim number."

34. The January 25 Letter does not reserve any rights and constitutes a waiver and admission of liability by Defendant for DENC's Claim. To date, DENC has not received any notice of revocation of the Letter by Defendant.

35. On or about February 19, 2018, however, DENC received a letter from a different adjuster of Defendant denying coverage for the Claim (the "Denial Letter"). The Denial Letter was signed by Mr. John W. Gartling, Senior Property Claim Specialist, for Philadelphia Insurance Companies. Upon information and belief, Mr. Gartling is located in Highlands Ranch, Colorado, and is an adjuster licensed in the state of Wyoming.

36. The Denial Letter began by stating that Defendant employed the services of an "independent adjusting firm." That firm's report is attached to the Denial Letter (the "Report").

37. The Report stated that the concrete slab Breezeway had been "displaced."

38. The Report stated that the exterior water-proofing and water management systems were materially defective, had failed, and had not been properly installed when constructed.

39. The Report also stated that dryer vents from the first and second floor launderettes had been improperly installed when constructed.

40. The Report stated that "significant deterioration" had occurred with respect to the wood framing that supported the Breezeway.

41. The Report stated that "a large number of students were in the

breezeway" and that "the wood framing (structural) member's [were unable] to support the dead (slab) and live (occupant) loads."

42. After adopting findings and conclusions from the Report, the Denial Letter proceeded to quote numerous exclusion and limitation provisions from the Policy.

43. Although Defendant implies that each of the quoted Policy provisions are relevant to DENC's Claim, the Denial Letter's compilation of Exclusions and Limitations from the Policy includes numerous errors and misrepresentations, including, but not limited to:

   a. provisions that are deleted, modified, and replaced by Endorsements within the Policy;

   b. provisions that are formatted to look like quotations when they are, in fact, paraphrasing of Policy language;

   c. provisions that are wholly irrelevant to the events at issue;

   d. references to exclusions or limitations without acknowledging other sections in the Policy that modify those exclusions or limitations in a way that provides coverage;

   e. citations to partial provisions without stating the full text of the provision that provides coverage;

   f. quotations modified so as to make Policy language appear as though it excludes or limits coverage when it actually provides coverage;

   g. a provision that is improperly labeled and numbered; and

8

h. failures to acknowledge coverage provided by the Policy.

44. For example, the Denial Letter states that Defendant must deny coverage for decay even though an Endorsement, which "changes the policy," expressly states coverage for " 'Building' decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse."

45. The Denial Letter also states that Defendant denied coverage because "the damage was not caused by any of the Specified Causes of Loss as defined under the policy," but the Policy works the exact opposite way and provides coverage unless it is expressly excluded or limited. The Policy and the endorsements cover many more losses beyond the Specified Causes of Loss but these were omitted from the Denial Letter.

46. Though Defendant acknowledges the date of loss "DOL" as "01/14/2018," the Denial Letter states that Defendant denied coverage *in toto* because "some of this damage occurred prior to the inception date of coverage."

47. With respect to the Exclusions and Limitations quoted in the Denial Letter, the Denial Letter fails to provide any reasonable explanation (or any explanation at all) as to why those provisions in relation to the facts or applicable law results in denial of DENC's Claim.

48. Further, the Denial Letter fails to make any acknowledgement of coverage within the Policy, even for coverage that directly contradicts the language used by the adjuster in his mischaracterization of the Policy language.

49. The Denial Letter never revokes, references, mentions, or discusses

9

Defendant's January 25 Letter accepting coverage.

50. DENC has complied with all conditions precedent and files this action to recover the amounts due under the Policy.

## CLAIMS FOR RELIEF

### First Claim for Relief – Breach of Contract

51. DENC incorporates all paragraphs herein by reference.

52. DENC and Defendant are parties to the Policy described above.

53. DENC has complied with all conditions and obligations under the Policy regarding its right to coverage by Defendant for its Claim.

54. Defendant denies that it has an obligation to cover the Claim, thereby breaching its obligations under the Policy and under North Carolina law.

55. Because Defendant has not provided coverage according to the Policy's terms, DENC has been forced to bear the costs of the damage including, but not limited to, substantial repairs, lost "Business Income," and "Extra Expenses" not normally incurred with respect to its business.

56. Defendant's wrongful failure and refusal to provide coverage for the Claim constitutes a breach of contract and has caused and will continue to cause DENC to expend its monies to bear the costs resulting from the covered loss at issue.

57. As a direct result of Defendant's breach of contract, DENC has been damaged in an amount greater than Twenty-Five Thousand Dollars and 00/100 ($25,000.00), to be determined at trial.

## Second Cause of Action – Declaratory Judgment

58. DENC incorporates all paragraphs herein by reference.

59. DENC contends, *inter alia*, that the Policy provides insurance coverage for DENC's Claim and that Defendant is required to cover the Claim.

60. Defendant sent a letter to DENC indicating there is coverage, but also sent a letter denying coverage.

61. Defendant has failed and refused to provide coverage for DENC's Claim, asserting, *inter alia*, that the damage was not covered by the Policy.

62. An actual controversy exists between DENC and Defendant regarding the parties' respective rights, duties, and obligations concerning the Policy.

63. A declaratory judgment will resolve the above disputes and will determine the parties' respective rights, duties, and obligations in this matter, and will alleviate the parties' uncertainty regarding Defendant's liability and DENC's rights under the policy.

64. Pursuant to N.C. Gen. Stat. § 1-253 *et seq.*, DENC is entitled to a declaration that, the Policy provides coverage for DENC's claim.

## Third Cause of Action – Breach of the Covenant of Good Faith and Fair Dealing

65. DENC incorporates all paragraphs herein by reference.

66. As set forth herein, Defendant is obligated to provide coverage for DENC's Claim under the terms of the Policy.

67. Defendant's obligations are not discretionary.

68. To the extent that Defendant argues or contends that it could exercise

11

discretion in regard to its obligations, however, it has a duty of good faith and fair dealing not to take actions that deny DENC the ability to receive the benefits to which it is entitled under the Policy.

69. Defendant has a duty to perform its obligations under the Policy that according to reason and justice it should do in order to carry out the purpose for which the Policy was entered into.

70. Defendant has not acted reasonably, in good faith, or in a manner consistent with fair play.

71. Among the many examples herein, Defendant has not acted in good faith by admitting liability for the Claim by one of its senior adjusters without reserving any rights, but then sending another letter from a different adjuster denying coverage that fails to revoke or even acknowledge the prior letter's waiver and admission of liability.

72. Defendant has not acted in good faith by misrepresenting the terms of the Policy and entirely failing to acknowledge terms that provide coverage for DENC's Claim.

73. Defendant has not acted in good faith by refusing to adjust or settle the Claim, failing to inform Defendant of the full basis for its refusal to adjust or settle the Claim, denying coverage even though the Policy covers collapse under the weight of people, collapse caused by hidden, unknown decay, and/or collapse caused by defective construction.

74. Defendant's actions are designed to avoid coverage for DENC's Claim.

12

75. Defendant's actions are injuring and interfering with DENC's right to receive the benefit of the policy, namely coverage for its Claim.

76. Defendant's breaches of the implied covenant of good faith and fair dealing have caused and will continue to cause damage to DENC.

77. DENC has incurred and will continue to incur cognizable damages as a result of Defendant's breaches of the implied covenant of good faith and fair dealing and is entitled to recovery of its damages, as well as to its attorneys' fees incurred in relation to this action.

### **Fourth Cause of Action – Violation of N.C.G.S. Chapter 75**

78. DENC incorporates all paragraphs herein by reference.

79. Defendant's actions in connection with this matter violate N.C. Gen. Stat. §§ 56-63-10 and 58-63-15, each of which constitutes an unfair method of competition or unfair or deceptive act or practice (the "Unfair Trade Practices") in violation of Chapter 75 of the North Carolina General Statutes.

80. In denying coverage in Defendant's most recent Denial Letter, Defendant failed to address coverage provided for "collapse" and instead cites to exclusions for collapse while omitting all language providing coverage for collapse. The Denial Letter does not dispute that a collapse occurred.

81. In the Denial Letter, Defendant cites various exclusions that are materially modified or even deleted in their entirety by various other parts of the Policy. These numerous misrepresentations are an attempt to confuse an insured about what language of the Policy is operative or applicable, obfuscating coverage

that is applicable to DENC's Claim.

82. Defendant denied coverage because "the damage is reportedly a result of long-term water intrusion and deteriorated wood framing" without citing the Policy provision providing the basis for such exclusion. In fact, such "deteriorated wood framing" is covered an endorsement to the Policy, which Defendant ignores.

83. In denying coverage, Defendant cited various exclusions that are inapplicable and irrelevant, such as those applicable to "flood," "steam boilers, steam pipes," and others, creating confusion and misleading an insured.

84. In denying coverage, Defendant misrepresented policy language by utilizing an ellipsis, a quotation mark, and block formatting—the style used by the Denial Letter to set off direct quotations of Policy language—to imply that language which is not in the Policy was actually a quotation of language from the Endorsement.

85. Defendant's actions as stated herein constitute Unfair Trade Practices, which include, but are not limited to:

    a. Defendant has misrepresented pertinent facts or insurance Policy provisions relating to coverages at issue. Defendant omitted Policy provisions that provide coverage; Defendant has cited to exclusions in the Policy that have been materially modified or even deleted by endorsements to the Policy that state "this endorsement changes the policy;"

    b. Defendant has not, in good faith, attempted to effectuate a prompt, fair and equitable resolution or settlement of DENC's Claim even though

14

Defendant's obligations to provide coverage for DENC's Claim are reasonably clear;

c. Defendant compelled DENC to initiate this lawsuit to recover the amounts due to DENC under the Policy by offering substantially less (denying coverage completely) than the amounts DENC will ultimately recover from this lawsuit;

d. Defendant failed to provide a reasonable explanation of the basis in the Policy in relation to the facts or applicable law for denial of a claim;

e. Defendant otherwise engaged in unfair methods of competition or unfair or deceptive acts or practices in this matter;

f. Such acts are in and affecting commerce; and

g. Such acts are the direct and proximate cause of damages to DENC.

86. As DENC's damages are a direct, foreseeable, and proximate result of Defendant's Unfair Trade Practices, DENC is entitled to recover such damages, including treble damages/punitive damages and attorney's fees as set forth in Chapter 75 of the North Carolina General Statutes, in an amount to be determined at trial.

### Fifth Cause of Action – Bad Faith Denial and Handling of Claim

87. DENC incorporates all paragraphs herein by reference.

88. Although the damages that DENC incurred a result of the Breezeway collapse and submitted as a part of its Claim are covered under the Policy, Defendant wrongfully refused and continues to refuse to provide coverage for DENC's Claim.

15

89.     Defendant unreasonably and with wrongful intent denied and continues to deny coverage for DENC's Claim despite DENC's full compliance with all requirements under the Policy.

90.     Upon information and belief, Defendant did not base its decision to deny coverage under the Policy on a legitimate or honest disagreement as to the validity of the Claim.

91.     Defendant failed to use reasonable care in the exercise of its relationship with DENC and / or the handling of DENC's Claim.

92.     Defendant did not act as a reasonable insurer would have acted under the same or similar set of facts and circumstances.

93.     Defendant's actions in failing to provide coverage for DENC's Claim were without justification or excuse, grossly negligent, oppressive, and/or taken in bad faith to further Defendant's own improper objectives and with disregard for the interests of DENC, to the prejudice and detriment of DENC, in violation of applicable statutory and common law.

94.     As a direct and proximate result of the egregiously wrongful conduct of Defendant, DENC is entitled to recover compensatory damages and, in addition to compensatory damages, punitive damages as set forth in N.C. Gen. Stat. §§1D-1 *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, DENC requests that the Court award the following relief:

1.     Judgment declaring that, pursuant to the Policy, Defendant, as a

matter of law, must provide coverage for DENC's Claim;

2. An award of compensatory, incidental, consequential, treble, and/or punitive damages in amount in excess of Twenty-Five Thousand Dollars and 00/100 ($25,000.00) to be determined at the trial of this matter, to DENC and against Defendant;

3. An award of pre- and post-judgment interest, attorneys' fees, expenses, costs, and disbursements pursuant to N.C. Gen. Stat. § 75-16 *et seq.* or other applicable law, against Defendant;

4. A jury trial on all issues so triable; and

5. Such other and further relief as the Court deems just and proper.

This the 30th day of July, 2018.

SHANAHAN McDOUGAL, PLLC

By: *[signature]*
Gregg E. McDougal NCSB # 27290
John E. Branch III, NCSB # 32598
Andrew D. Brown, NCSB # 45898
H. Denton Worrell, NCSB # 49750
128 E. Hargett Street, Third Floor
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
Facsimile: (919) 856-9499
gmcdougal@shanahanmcdougal.com
jbranch@shanahanmcdougal.com
abrown@shanahanmcdougal.com
dworrell@shanahanmcdougal.com
*Attorneys for Plaintiff*