IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DENC, LLC, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 1:18-cv-00754 |
| ) | |
| vs. ) | |
| ) | |
| PHILADELPHIA INDEMNITY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANT PHILADELPHIA'S
MOTION FOR SUMMARY JUDGMENT**

David L. Brown
David G. Harris II
GOLDBERG SEGALLA LLP
800 Green Valley Road, Suite 302
Greensboro, North Carolina 27408
Telephone: 336.419.4900
Email: dbrown@goldbergsegalla.com
　　　　dharris@goldbergsegalla.com

*Attorneys for Defendant
Philadelphia Indemnity Insurance Company*

24092670.v1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

SUPPLEMENTAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    I.       Relevant Policy Language . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    II.      Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

    III.     Case Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

## TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Chatterton*,
    135 N.C. App. 92, 518 S.E.2d 814 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fortune Ins. Co. v. Owens*,
    351 N.C. 424, 526 S.E.2d 463 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hobson Const. Co. v. Great Am. Ins. Co.*,
    71 N.C. App. 586, 322 S.E.2d 632 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ken Johnson Properties, LLC v. Harleysville Worcester Ins. Co.*, No. 12-1582,
    2013 WL 5487444 (D. Minn. Sept. 30, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 6–7

*Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co.*,
    98 So.3d 74 (Fla. Dist. Ct. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Malbco Holdings, LLC v. AMCO Ins. Co.*,
    629 F.Supp.2d 1185 (D.Or. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Philadelphia submits this Supplemental Brief pursuant to the Court's Order of September 18, 2019 [D.E. 41].

## SUPPLEMENTAL ARGUMENT

**I.  Relevant Policy Language**

Philadelphia agrees with the Court that the only potential for coverage under the Policy for the "loss" at issue is via the Collapse Endorsement. The "loss" is plainly excluded from coverage under the primary coverage form in the Policy based upon the application of several exclusions,[1] as described in Philadelphia's prior briefing. [D.E. 32, pp. 13-18]  Therefore, the pertinent inquiry now is whether the Collapse Endorsement grants some coverage that the primary coverage form excluded.

Additionally, Philadelphia agrees with most of the Court's list of relevant policy language, but suggests modifications such that the analysis should be as follows:

II.  Coverage is available under the Collapse Endorsement if:

    A.    the building or part of the building fell down abruptly with the result that the building or a part of it could not be occupied for its intended purpose (§ II.D.1.); **AND**

    B.    the collapse was caused by:

        (1)    building decay that is hidden from view (§ II.D.2.a), **OR**

        (2)    use of defective methods of construction if the collapse is caused in part by weight of people (§ II.D.2.d.(4)); **AND**

    C.    the "loss" commenced during the policy period (D.E. 32-8, p. 110, § 4.a(1)); **AND**

---

[1] The "Decay or Deterioration" exclusion, the "Defective Construction" exclusion, and the "Long-Term Water Intrusion" exclusion.

D. Coverage is not excluded. Coverage is excluded if the building or the relevant part thereof is:

(1) standing, **OR**

(2) in danger of falling down or caving in (§ II.D.3).

The Collapse Endorsement has two parts.[2] Part **I.** modifies the "Collapse" exclusion in the primary coverage form. Part **II.** modifies the "Additional Coverage - Collapse" provision in the primary coverage form and is an affirmative grant of coverage. While each provision was included on one policy endorsement (PI-ULT-142 - August 2014 edition), they operate separately, not in conjunction with one another. Part **I.** excludes coverage for "collapse", and Part **II.** restores limited coverage for an "abrupt collapse", subject to the exclusions contained in the endorsement.

With respect to the motions now before the Court, only Part **II.** is at issue. Philadelphia does not argue that the "Collapse" exclusion bars coverage for the "loss" because, as noted above, other policy exclusions plainly exclude coverage for the "loss" under the primary coverage form. The only question, therefore, is whether Part **II.** (the "Additional Coverage – Collapse" coverage provision) restores any coverage.

With this background in mind, Philadelphia's list of relevant policy language differs from the Court's list in three ways. First, Philadelphia deletes section **II.A.** of the Court's list, which stated: "Coverage is available under the Collapse Endorsement if: A. the collapse is caused by weight of people, § I(B)(2)(i)(b)(iv)." This language comes

---

[2] The Collapse Endorsement is attached as **Exhibit A**.

from an exception to the "Collapse" exclusion in the endorsement. An exception to an exclusion merely provides circumstances under which an exclusion may not apply, but an exception to an exclusion does not "create" coverage. [D.E. 39, p. 6] Furthermore, as noted above, language from Part **I**. of the endorsement—the "Collapse" exclusion—is not at issue here.

Second, Philadelphia's list of relevant policy language modifies the language in section **II.B.(1)** of the Court's list (now found in section **II.A.** of Philadelphia's list) to provide that the Collapse Endorsement only applies if "the building or part of [it] fell down abruptly **<u>with the result</u>** that the building or a part of it could not be occupied" (as stated in the endorsement), rather than that "part of the building fell down abruptly, **AND** the building could not be occupied for its intended purpose" (as stated in the Court's list). Under the terms of the endorsement, coverage is not afforded simply because a part of the building abruptly fell down **and** the building cannot be occupied. Rather, the endorsement requires that the insured establish that the building (or part of it) abruptly fell down "**<u>with the result that</u>**" the building (or part of it) cannot be occupied.

While this may at first appear to be a matter of semantics, the distinction is critical because the evidence in this case is that the "loss" was not caused by the building (or part of it) "abruptly" falling down "**<u>with the result</u>**" being that the building (or part of it) could not be occupied. First, the "loss" was not caused by "an abrupt falling down" of the building (or part of it), but rather by long-term water intrusion. Steve Moore (the only engineering expert designated by either party) opined that the damage to
3

the Breezeway was ongoing for 14 years, and began shortly after the building was constructed in 2004. Mr. Moore opined that the "loss" was merely a continuation of the deterioration of the Breezeway's wooden framing caused by gradual water intrusion over many years. [D.E. 32-13, pp. 9-10] In fact, Mr. Moore testified that the repairs to the Breezeway required by the long-term water intrusion damage would have been the same shortly before January 14, 2018 and thereafter. [D.E. 39-1]

However, even if there had been an abrupt falling down of a part of the building, coverage would not be afforded under the Collapse Endorsement because, as noted above, it is not sufficient that there simply be an abrupt falling down of part of the building **and** that part of the building cannot be occupied. Rather, the Collapse Endorsement requires an abrupt falling down of a part of the building "**with the result**" that the building (or part of it) cannot be occupied. Here, as Mr. Moore testified, the building could not be occupied due to long-term wood rot, not due to any abrupt falling down of part of the building. [D.E. 32-13, p. 13]

Third, Philadelphia's list of the relevant policy language adds as a condition for coverage that the "loss" commence during the policy period. In order for coverage to be afforded under the Policy, the "loss" must **commence** during the relevant policy period. [D.E. 32, p. 24] The damage to the Breezeway had been ongoing since the building was constructed in 2004, well before the Policy incepted on November 25, 2017. *Id.* at 25. Therefore, the "loss" did not commence during the policy period, and so coverage is not afforded.

4

24092670.v1

Case 1:18-cv-00754-CCE-LPA   Document 42   Filed 09/25/19   Page 7 of 13

## II. Burden of Proof

A party seeking benefits under an insurance contract has the burden of showing coverage. *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 430, 526 S.E.2d 463, 467 (2000). Therefore, an insured has the burden of bringing itself within the insuring provisions and, if the insured meets that burden, the insurer has the burden to prove that an exclusion bars coverage. *Hobson Const. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984). The insured also has the burden to prove that any exception to an exclusion restores coverage. *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999).

Sections **II.A.**, **II.B.**, and **II.C.** of Philadelphia's list of relevant policy language (sections **II.B.(1)** and **II.B.(2)** of the Court's list) are coverage provisions for which DENC has the burden of proof. Section **II.D.** of Philadelphia's list (section **II.B.(3)** of the Court's list) contain exclusions for which Philadelphia has the burden of proof. Section **II.A.** of the Court's list (to the extent it applies) is an exception to an exclusion for which DENC has the burden of proof.

## III. Case Law

The cases referenced in the Order [D.E. 41] do not apply in our case because the language in the collapse endorsements in those cases differs in a significant way from the language in the Collapse Endorsement in our case. Specifically, the referenced cases define "collapse" as an "abrupt falling down or caving in," and state in the definition of "collapse" itself that a building that is standing "is not considered to be in a state of

5

24092670.v1

collapse." The decisions found that these two parts of the policies' definitions of "collapse" were internally inconsistent because a building could qualify as a "collapse" under the first part of the definition (i.e. a sagging roof causing a building to be condemned), but not a "collapse" under the second part (i.e. the condemned building with the sagging roof is still standing). Because both provisions were in the same definition of "collapse", the courts viewed the definition as ambiguous. *Ken Johnson Properties, LLC v. Harleysville Worcester Ins. Co.*, No. 12-1582, 2013 WL 5487444, *11-12 (D.Minn. Sept. 30, 2013); *Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co.*, 98 So.3d 74, 77-79 (Fla. Dist. Ct. App. 2012); *Malbco Holdings, LLC v. AMCO Ins. Co.*, 629 F.Supp.2d 1185, 1196-97 (D.Or. 2009).

Unlike the referenced cases, the Collapse Endorsement in the Philadelphia Policy contains an exclusion which is separate from its definition of "abrupt collapse". The Collapse Endorsement does not state that a building that is standing cannot be in a state of "collapse", but rather provides that, even if there has been an "abrupt collapse", coverage is excluded if the building is still standing, even if it shows evidence of cracking, sagging, leaning, etc. As such, the arguable internal inconsistency in the "collapse" definition in the referenced cases does not exist in the endorsement

6

24092670.v1

Case 1:18-cv-00754-CCE-LPA Document 42 Filed 09/25/19 Page 9 of 13

at issue in our case.[3] In fact, the Collapse Endorsement in the Policy was first promulgated in August 2014 (after the publication of the referenced cases), and was designed to eliminate any arguable ambiguity in prior "collapse" endorsements. This Collapse Endorsement does so by moving the underwriting concept that "collapse" coverage is only afforded where the building "falls to the ground" to an exclusion in order to eliminate any alleged internal inconsistency in the insuring agreement.

In this case, the exclusions found in paragraph **D.3** of the Collapse Endorsement are case dispositive. Paragraph **D.3.** excludes any coverage otherwise afforded by the Collapse Endorsement if the building at issue is still standing, even if the building shows evidence of cracking, bulging, sagging, etc., or is in danger of falling down or caving in. Based on the forecast of evidence, Philadelphia has met its burden of proving the applicability of this exclusion. As outlined in Philadelphia's prior briefing [D.E. 39, pp. 8-10], although the breezeway floor cracked and deflected, the undisputed evidence—including photographs and video of the breezeway and the testimony of all witnesses, including that of the only engineering expert designated by the parties—establishes that the building and breezeway remained standing after the "loss", even though repairs to the decayed and deteriorated wood framing were needed. *Id.*

---

[3] Also, the *Ken Johnson Properties* court recognized "[n]umerous courts have interpreted similar collapse provisions and have reached differing conclusions" with some "conclud[ing] that the language is unambiguous." *Ken Johnson Properties*, at *10. Indeed, as previously outlined by Philadelphia, many courts (including a recent North Carolina federal court) have addressed endorsements with identical language to the endorsements in the referenced cases, and found the language to unambiguously bar coverage under circumstances similar to the present matter. [D.E. 32, pp. 20-24]

7
24092670.v1

Case 1:18-cv-00754-CCE-LPA   Document 42   Filed 09/25/19   Page 10 of 13

## CONCLUSION

All of the evidence in this case is that the "loss" at issue was caused by long-term water intrusion resulting in deterioration of the Breezeway's framing, and that the Breezeway continued to stand even after the "loss." Such a "loss" is not covered under the Policy for three independent reasons. First, the "loss" does not qualify as an "abrupt collapse" under the Policy ("abrupt falling down or caving in of a 'building' or any part of [it] **with the result** that the 'building' or part of [it] cannot be occupied"). Second, the "loss" at issue did not commence during the policy period, given that the undisputed evidence is that the deterioration had been ongoing for 14 years. Finally, and significantly, even if the "loss" qualified as an "abrupt collapse", coverage is excluded because the breezeway was still standing after the "loss", regardless of whether it was in danger of falling down or caving in.

This the 25th day of September, 2019.

/s/ David L. Brown
David L. Brown (N.C. State Bar No. 18942)
David G. Harris II (N.C. State Bar No. 35327)
GOLDBERG SEGALLA LLP
800 Green Valley Road, Suite 302
Greensboro, North Carolina 27408
Telephone: 336.419.4900
Email: dbrown@goldbergsegalla.com
dharris@goldbergsegalla.com

*Attorneys for Defendant*
*Philadelphia Indemnity Insurance Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d) and this Court's Order dated September 18, 2019 [D.E. 41], counsel for the Defendant Philadelphia Indemnity Insurance Company certifies that the foregoing brief, which was prepared using 13-point proportionally-space font, specifically Times New Roman, contains less than 2,000 words, including the body of the brief, headings, and footnotes, but excluding the caption, signature lines, certificate of service, and any cover page or index, as reported by the word-processing software.

This the 25th day of September, 2019.

                                                **GOLDBERG SEGALLA LLP**

/s/ David L. Brown
David L. Brown (N.C. State Bar No. 18942)
David G. Harris II (N.C. State Bar No. 35327)
800 Green Valley Road, Suite 302
Greensboro, North Carolina 27407
Telephone: 336.419.4910
Email: dbrown@goldbergsegalla.com
        dharris@goldbergsegalla.com

*Attorneys for Defendant*
*Philadelphia Indemnity Insurance Company*

24092670.v1

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing Supplemental Brief in Support of Defendant Philadelphia's Motion for Summary Judgment was filed electronically with the Clerk of Court using the Court's CM/ECF system. Parties may access this filing through the Court's system. Notice of this filing will be sent by operation of the Court's CM/ECF system to the following counsel of record.

| | |
|---|---|
| John E. Branch III<br>Andrew Brown<br>SHANAHAN LAW GROUP, PLLC<br>128 E. Hargett Street, Suite 300<br>Raleigh, North Carolina 27601<br>Telephone: 919.856.9494<br>jbranch@shanahanlawgroup.com<br>abrown@shanahanlawgroup.com<br>*Attorneys for Plaintiff DENC* | Gregg E. McDougal<br>Denton Worrell<br>McDOUGAL WORRELL, LLP<br>316 W. Edenton Street, Suite 100<br>Raleigh, North Carolina 27603<br>Telephone: (919) 893-9500<br>gregg@mcdougalworrell.com<br>denton@mcdougalworrell.com<br>*Attorneys for Plaintiff DENC* |

This the 25th day of September, 2019.

**GOLDBERG SEGALLA LLP**

/s/ David L. Brown
David L. Brown (N.C. State Bar No. 18942)
David G. Harris II (N.C. State Bar No. 35327)
800 Green Valley Road, Suite 302
Greensboro, North Carolina  27407
Telephone:  336.419.4910
Email: dbrown@goldbergsegalla.com
dharris@goldbergsegalla.com

*Attorneys for Defendant*
*Philadelphia Indemnity Insurance Company*