UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
**1:18-CV-00754**

| | |
|---|---|
| DENC, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PHILADELPHIA INDEMNITY | ) |
| INSURANCE COMPANY, TOKIO | ) |
| MARINE NORTH AMERICA, | ) |
| INC., D/B/A PHILADELPHIA | ) |
| INSURANCE COMPANIES, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

NOW COMES Plaintiff DENC, LLC, ("Plaintiff" or "DENC"), by and through undersigned counsel, and pursuant to the Court's Order dated September 18, 2019 (the "Order") (ECF 41), hereby submits this Supplemental Brief. Plaintiff shows the Court as follows:

In response to the first question regarding the Court's understanding of the Policy provisions, Plaintiff agrees with the Court's subpart framework provided in its Order, but makes the following observation. Part I of the Order notes that "Coverage is available only under the Collapse Endorsement." Given the Policy here is an "all-risks" policy (and not a "named-peril" policy), "Coverage" is technically created under the "A. Causes of Loss Form," which states: "Covered Causes of Loss means Risks of Direct Physical Loss unless the 'loss' is: 1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations." (ECF 34-2, Policy, at PHLY0114).[1]

The "all-risks" nature of the Policy is informative as to the Court's second question regarding the classification of each subpart to assist in evaluating the burden of proof. *See Mejia v. Citizens Prop. Ins. Corp.*, 161 So. 3d 576, 578 (Fla. Dist. Ct. App. 2014) ("[T]he burden of proof is assigned according to the nature of the insurance policy."); *see also* 5 New Appleman on Insurance Law § 50.01 (lib. ed. 2019) ("An 'all-risk' policy provides significant burden of proof advantages for an insured as compared to a named peril policy.").

For an "all-risks" policy, the insured has the initial "burden of proving that the insured property suffered a loss." *See Mejia*, 161 So. 3d at 578; *see also Avis v. Hartford*

---

[1] There is no dispute that the Policy here is an "all-risks" policy, meaning it provides coverage for all risks unless expressly excluded. (ECF 34-16, Groff Depo., at 40(21-24)).

2

*Fire Ins. Co.*, 195 S.E.2d 545, 547 (N.C. 1973). The insured's burden is "relatively light." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).

Once the insured has met its initial burden, "[t]he burden then shifts to the insurer to prove that the cause of loss was excluded from coverage under the policy's terms." *Mejia*, 161 So. 3d at 578; *see Sec. Ins. Grp. of Hartford v. Parker*, 210 S.E.2d 741, 741 (N.C. Ct. App. 1975) ("[T]he burden of proof is upon the insurer to establish that the loss falls within the exception or exclusion asserted."). "Exclusions from liability are not favored, and are to be strictly construed against the insurer." *Se. Airmotive Corp. v. U.S. Fire Ins. Co.*, 337 S.E.2d 167, 169 (N.C. Ct. App. 1985). The insurer's burden has been described as "a heavy one." *Parks Real Estate Purchasing Grp. v. St. Paul Fire Ins.*, 472 F.3d 33, 42 (2d Cir. 2006).

Here the Policy language is very confusing and, as it relates to classification of each subpart of the Order, may be read in several ways. As shown below, given the "language used in the policy is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured, since the company prepared the policy and chose the language." *Grant v. Emmco Ins. Co.*, 243 S.E.2d 894, 897 (N.C. 1978).

Subpart II.A of the Order ("collapse is caused by weight of people") may reasonably be read as (1) as "an exception to an exclusion" or (2) as a defining part of the overall collapse "exclusion." The latter construction is appropriate here.

Subpart II.A appears in the Collapse Endorsement (paid for by DENC) which, by definition, restates and refines the scope of the "i. Collapse" exclusion. (*See* ECF 34-2, Policy, at PHLY0183 (Section B. Exclusions, 2.i. is deleted in its entirety and replaced with the following . . . .")). This entire section is expressly identified as an "Exclusion." It does not, however, change the "all-risks" coverage nature of the Policy. *See Meija*, 161 So. 3d at 578 (finding the endorsement "did not change the 'all risks' nature of the underlying policy; it merely narrowed the earth sinking exclusion." (emphases added)); *accord Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1256 (Pa. Super. Ct. 2008); *Strubble v. U.S. Auto Ass'n*, 110 Cal. Rptr. 828, 831-32 (Ct. App. 1973). The Policy here clearly states that "Risks of Direct Physical Loss" remain covered "unless the 'loss' is: 1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations." (ECF 34-2, Policy, at PHLY0114).

This reading is bolstered by North Carolina insurance interpretation principles, which, *inter alia*, require that insurance "must be construed liberally so as to provide coverage, whenever possible by reasonable construction," *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538 (1986), and that "the construction most favorable to the insured" governs, *Grant*, 243 S.E.2d at 897. Thus, Subpart II.A simply narrows the scope of the "exclusion" from the coverage provided, and the burden of proof remains on Philadelphia to squarely show that the exclusion applies.

Even if Subpart II.A is read as an "exception to an exclusion," given the Policy is "all-risks," the burden of proof remains on Philadelphia. *E.g.*, *Meija*, 161 So. 3d at 578; *Strubble*, 110 Cal. Rptr. at 831-32. "In effect, there is a presumption of coverage, which the insurer has the burden to rebut by proving that the claim falls within a specific policy exclusion." *Betz*, 957 A.2d at 1257. "Any other construct would merely encourage insurers to orchestrate a shell game of exclusions and exceptions to exclusions," *id.*, allowing them "to manipulate the burden of proof by sleight of hand," *id.* n.5.

Similarly, Subpart II.B of the Order (regarding "Section D. Additional Coverage – Collapse"), may reasonably be read (1) as "coverage" or (2) as a defining part of the overall collapse "exclusion." Its title alone, "Additional Coverage," sounds like a "coverage" provision. However, as an "all-risks" policy, the Policy does not use Section D to create coverage; it uses Section D to define the limited scope of the "i. Collapse" exclusion. (*See* ECF 34-2, Policy, at PHLY0183 ("This exclusion i. does not apply: (a) To the extent that coverage is provided under the Additional Coverage – Collapse.")). Therefore, the better reading is that Subpart II.B is part of the overall "exclusion." To find otherwise would cut against the type of "all-risks" policy that DENC purchased and would require applying something akin to the burden of proof under a named-peril policy, which is not the type of policy at issue here. *See* 5 New Appleman on Insurance Law § 41.02[1][b] (lib. ed. 2019).

Moreover, "[i]t must be remembered that the policy of insurance was written by the [insurance] company's lawyers," *Barker v. Iowa Mut. Ins. Co.*, 85 S.E.2d 305, 307 (N.C.

1955), "filled with conditions inserted by persons skilled in the learning of the insurance law and acting in the exclusive interest of the insurance company," *id.* (citation omitted). "[T]he courts must, therefore, in case of doubt or ambiguity as to its meaning, construe the policy strictly against the insurer and liberally in favor of the insured." *Id.*

Similarly, Sub-subparts II.B.(1) and (2) follow suit and are best classified as part of the overall collapse "exclusion." Sub-subpart II.B.(3) is plainly an "exclusion." Thus the burden of proof remains on Philadelphia throughout. *See Sec. Ins. Grp. of Hartford*, 210 S.E.2d at 741.

Turning to the third question regarding the caselaw referred to by the Court, the cited cases apply to the Court's analysis on several key points. First, the cases make clear that a "collapse" does not have to fall all the way to the ground. *Ken Johnson Props., LLC v. Harleysville Worcester Ins. Co.*, No. 12-1582, at 23 (D. Minn. Sep. 30, 2013) (finding "that the roof sagged 10.5 inches" constituted a "collapse"); *Malbco Holdings, LLC v. Amco Ins. Co.*, 629 F. Supp. 2d 1185, 1196 (D. Or. 2009) (same for hotel building that fell "a few inches"); *Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co.*, 98 So. 3d 74, 78 (Fla. Dist. Ct. App. 2012) (same for drop ceiling that "deflected downward twelve inches"). Though parts of the Breezeway at issue here did fall to the ground, the cases provide that such a determination is not required.

The cited cases are also consistent with North Carolina caselaw addressing "collapse." *See, e.g.*, *Erie Ins. Exchange v. Bledsoe*, 540 S.E.2d 57, 62 (N.C. Ct. App.

2000) (buckling of floor constituted a "collapse"); *Markham v. Nationwide Mut. Fire. Ins. Co.*, 481 S.E.2d 349, 356 (N.C. Ct. App. 1997) (same for settling of house); *Guyther v. Nationwide Mut. Fire Ins. Co.*, 428 S.E.2d 238, 242 (N.C. Ct. App. 1993) (same for two to three inch "dip" on roof); *Thomasson v. Grain Dealers Mut. Ins. Co.*, 405 S.E.2d 808, 810 (N.C. Ct. App. 1991) (same for sagging of floor). Moreover, Defendant's 30(b)(6) designee, who testified to the "Drafting of the Crest Policy" and the "forms and other endorsements," (ECF 34-16, Groff Depo., at 7), admitted that it was not necessary for the Breezeway to have completely fallen to the ground to constitute a "collapse," (*id.* at 70(3-7)).

Like the policies in the cited cases, the Policy here includes an "occupancy restriction" in its definition of Additional – Coverage Collapse, which supports that the collapse need not fall all the way to the ground. Even a building that has only partially fallen down can prevent its normal occupation to constitute a collapse, which occurred at the Crest here. *See Malbco Holdings, LLC*, 629 F. Supp. 2d at 1196; *Ken Johnson Props., LLC*, No. 12-1582, at 23; *Kings Ridge Cmty. Ass'n, Inc.*, 98 So. 3d at 78; *see also* ECF 34-8, Def.'s Produc., at PHLY0220 (showing the Crest was condemned). As reasoned by the *Malbco Holdings* Court:

> To ignore that occupancy restriction would be to render it meaningless. The Policy is not written in terms of how far a building must fall down or to what degree a building must cave in to constitute collapse. Clearly one cannot occupy a building if it has completely fallen down or caved in. However, the same may be true for a building which has partially fallen down

7

Case 1:18-cv-00754-CCE-LPA   Document 43   Filed 09/25/19   Page 7 of 11

> or caved in. It is far from clear that the Policy requires total
> destruction in order for a collapse to occur.

*Malbco Holdings, Inc.*, 629 F. Supp. 2d at 1196.

Similar to the policies in the cited cases, the Policy here includes a "standing" exclusion to Section D. Additional Coverage – Collapse (Sub-subpart II.B.(3) of the Order). As the cases conclude, the "standing" exclusion does not apply here because the Breezeway had already collapsed. *See Malbco Holdings, LLC*, 629 F. Supp. 2d at 1196; *Kings Ridge Cmty. Ass'n, Inc.*, 98 So. 3d at 78. Moreover, if "standing" is the opposite of "collapse," then the Policy's definition of collapse implies that the building may still be standing but also be collapsed at the same time, which renders the provision ambiguous. *See Malbco Holdings, LLC*, 629 F. Supp. 2d at 1196; *Ken Johnson Props., LLC*, No. 12-1582, at 24; *Kings Ridge Cmty. Ass'n, Inc.*, 98 So. 3d at 79. Exclusions are not favored under North Carolina law, and "all ambiguous provisions will be construed against the insurer and in favor of the insured." *State Capital Ins. Co.*, 350 S.E.2d at 68.

Finally, the Policy presents one section that is more favorable to DENC that the cited cases did not address—namely, that the Policy has another section that covers collapse caused by weight of people (Subpart II.A of the Order). The cited cases all dealt with collapse language similar to that found in the Additional Coverage – Collapse section of the Policy here (Subpart II.B of the Order). *See Malbco Holdings, LLC*, 629 F. Supp. 2d at 1193; *Ken Johnson Props., LLC*, No. 12-1582, at 4-5; *Kings Ridge Cmty. Ass'n, Inc.*, 98 So. 3d at 75. However, the Court need look no further than Subpart II.A of the Order

8

for a "collapse" caused by "weight of people," which does not have all of the confusing "ins" and "outs" of Subpart II.B.

This the 25th day of September, 2019.

**McDOUGAL WORRELL LLP**

By:   */s/ Gregg E. McDougal*
Gregg E. McDougal, NCSB # 27290
H. Denton Worrell, NCSB # 49750
316 West Edenton Street, Suite 100
Raleigh, North Carolina 27603
Telephone: (919) 893-9500
gregg@mcdougalworrell.com
denton@mcdougalworrell.com

**SHANAHAN LAW GROUP, PLLC**

By:   */s/ John E. Branch*
John E. Branch III, NCSB # 32598
Andrew D. Brown, NCSB # 45898
128 E. Hargett Street, Third Floor
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
Facsimile: (919) 856-9499
abrown@shanahanlawgroup.com
jbranch@shanahanlawgroup.com

*Attorneys for Plaintiff*

9

# CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Order dated September 18, 2019 (the "Order") (ECF 41) and Rule 7.3(d) of the Local Rules of Practice and Procedure for the United States District Court for the Middle District of North Carolina, the undersigned certifies that Plaintiff's Supplemental Brief complies the limitation on length of briefs.

This the 25th day of September, 2019.

                                                 **McDOUGAL WORRELL LLP**

By:   */s/ H. Denton Worrell*
       Gregg E. McDougal, NCSB # 27290
       H. Denton Worrell, NCSB # 49750
       316 West Edenton Street, Suite 100
       Raleigh, North Carolina 27603
       Telephone: (919) 893-9500
       gregg@mcdougalworrell.com
       denton@mcdougalworrell.com
       *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

      I hereby certify that the foregoing Plaintiff's Supplemental Brief was filed this the 25th day of September, 2019 with the Clerk of Court using the CM/ECF system. Parties may access this filing through the Court's Electronic Filing System. Notice of this filing will be sent to the following counsel of record by operation of the Court's Electronic Filing System:

> David L. Brown
> David G. Harris, II
> Goldberg Segalla LLP
> 800 Green Valley Road
> Suite 302
> Greensboro, NC  27408

This the 25th day of September, 2019.

**McDOUGAL WORRELL LLP**

By: */s/ H. Denton Worrell*
Gregg E. McDougal, NCSB # 27290
H. Denton Worrell, NCSB # 49750
316 West Edenton Street, Suite 100
Raleigh, North Carolina 27603
Telephone: (919) 893-9500
gregg@mcdougalworrell.com
denton@mcdougalworrell.com
*Attorneys for Plaintiff*

11

Case 1:18-cv-00754-CCE-LPA   Document 43   Filed 09/25/19   Page 11 of 11