IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| DENC, LLC, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | 1:18-CV-754 |
|  | ) |  |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

On January 14, 2018, there was a party at an apartment complex owned by the plaintiff, DENC, LLC. During the party, the breezeway in one of the buildings collapsed. After the defendant, Philadelphia Indemnity Insurance Company, denied DENC's insurance claim, DENC sought a declaratory judgment as to coverage and asserted various state law claims for damages. The Court has previously granted summary judgment for DENC on its coverage claim and, as to liability, on its breach of contract claim, Doc. 44; 2019 WL 5195888 (M.D.N.C. Oct. 15, 2019), and now addresses the remaining aspects of the pending summary judgment motions.

### Discussion

**A. Breach of the covenant of good faith and fair dealing**

Philadelphia has moved for summary judgment on DENC's claim for breach of the covenant of good faith and fair dealing. Philadelphia contends that since there is no

coverage, DENC's extra-contractual claims fail as a matter of law. As the Court has concluded there is coverage, this argument is without merit. Philadelphia otherwise does not identify, much less address, the elements of a claim for breach of the covenant of good faith and fair dealing, *see* LR 56.1(e), or make any other argument as to why DENC cannot be successful on this claim as a matter of law. Philadelphia's motion for summary judgment as to this claim will be denied.

### B. Common-law bad faith refusal to settle or provide coverage

Philadelphia has moved for summary judgment on DENC's claim for common-law bad faith refusal to settle or provide coverage. As Philadelphia points out, Doc. 32 at 26–27, there is no liability for bad faith refusal to settle when there is an honest disagreement. *See, e.g.*, *Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 631 (W.D.N.C. 2006) (citing *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976)).

Philadelphia has presented evidence of an honest disagreement. In response, DENC addresses only the Chapter 75 claims analyzed *infra* and does not discuss the common law claim. *See* Doc. 38. It does not identify the specific, authenticated facts in the record, *see* LR 56.1(e), that support a finding that Philadelphia engaged in "fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights," which is a necessary part of this claim. *Lovell v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 416, 422, 424 S.E.2d 181, 185, *aff'd per curiam*, 334 N.C. 682, 435 S.E.2d 71 (1993); *see also Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 394, 331 S.E.2d 148, 154 (1985).

The Court will grant Philadelphia's motion for summary judgment as to this claim.

## C. Chapter 75 – Unfair and Deceptive Trade Practices Act

Both parties have moved for summary judgment on DENC's Chapter 75 claims, which are all based on alleged violations of North Carolina statutes governing conduct of insurance companies when settling claims. *See* N.C. Gen. Stat. § 58-63-15(11). To establish a violation of N.C. Gen. Stat. § 75-1.1, DENC must show: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).[1]

Section 58-63-15(11) contains a number of subsections setting forth different examples of ways an insurance company commits an unfair trade practice. A violation of any one of these subsections constitutes an unfair or deceptive act or practice under Chapter 75. *Elliott*, 883 F.3d at 396; *Gray*, 352 N.C. at 67, 529 S.E.2d at 680–81; *Country Club of Johnston Cty., Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002).[2] Determining whether certain conduct is "an unfair or

---

[1] It is not completely clear that DENC must show that the practice affected commerce and caused injury. *See Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 n.7 (4th Cir. 2018) (noting that "it is unclear whether conduct that violates § 58-63-15(11) is a per se violation of § 75-1.1," without additional proof of affecting commerce and proximate cause, and collecting cases). For purposes of this motion, the Court assumes DENC must prove these elements.

[2] While N.C. Gen. Stat. § 58-63-15(11) contains a requirement to show a "general business practice," that requirement does not apply in the Chapter 75 context, since "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers . . . ." *Gray*, 352 N.C. at 71, 529 S.E.2d at 683 (holding as to violations of § 58-63-15(11)(f), specifically); *Country Club*, 150 N.C. App. at 246, 563 S.E.2d at 279 (extending *Gray* to apply to all conduct described in § 58-63-15(11)).

deceptive practice" under N.C. Gen. Stat. § 75-1.1 "is a question of law for the court." *Gray*, 352 N.C. at 68, 529 S.E.2d at 681.

The Court will examine the evidence as to each subsection separately. The specific language of the relevant statutory subsection is recited in the heading.

   1. **N.C. Gen. Stat. § 58-63-15(11)(n): "Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement"**

For claims under this subsection, courts consider whether an insurance defendant promptly initiated an investigation and then provided a detailed explanation of its results, preferably with supporting documentation. *See Majstorovic v. State Farm Fire & Cas. Co.*, No. 5:16-CV-771-D, 2018 WL 1473427, at *7 (E.D.N.C. Mar. 24, 2018); *Cent. Carolina Bank & Trust Co. v. Sec. Life of Denver Ins. Co.*, 247 F. Supp. 2d 791, 804 (M.D.N.C. 2003); *Country Club*, 150 N.C. App. at 247, 563 S.E.2d at 279–80. While a claimant's mere disagreement with the insurance company's decision does not prove a violation of this subsection, *Cent. Carolina Bank*, 247 F. Supp. 2d at 804, the insurance company's failure to clarify which policy provisions led to a denial and why— particularly when there is evidence the company initially believed the policy would cover the loss at issue—violates this subsection. *See Country Club*, 150 N.C. App. at 246–47, 563 S.E.2d at 279–80.

An insurance company's practice or communication "is deceptive if it has the tendency to deceive," even if the company asserts it acted in good faith. *Gray*, 352 N.C. at 68, 529 S.E.2d at 681. DENC need not show that it was "actually deceived" to prevail

4

on this claim. *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 534-5 (4th Cir. 1989) (citing *Chastain v. Wall*, 78 N.C. App. 350, 356, 337 S.E.2d 150, 154 (1985)).

Here, Philadelphia sent conflicting letters to DENC about coverage. On January 23, 2018, Philadelphia advised DENC it was conducting the investigation under a reservation of rights. Doc. 32-12. Two days later, it sent DENC a letter stating that "[w]e have issued, or will be issuing payment to you, or on your behalf, for damages or injuries sustained" for the claim and that Philadelphia will "be looking to those parties responsible for the damages sustained and we will be seeking reimbursement of all monies paid under the policy." Doc. 34-12. But then, a few weeks later on February 19, Philadelphia denied the claim in a confusing denial letter that did not mention, much less rescind or explain, its earlier letter saying it would provide coverage. Doc. 34-14.

Nothing in the denial letter links "the basis in the insurance policy" for the denial "to the facts," as required by § 58-63-15(11)(n). The letter does provide a detailed summary of the findings of the inspector it hired, Doc. 34-14 at 1–2, but nowhere are those findings "related to" the policy language. Instead, Philadelphia simply repeats verbatim several pages of what purport to be policy excerpts, and then notes—without explaining how these policy excerpts apply individually or in combination—that Philadelphia will deny coverage because "the damage is reportedly the result of long-term water intrusion and deteriorated wood framing," arising from construction issues. *Id.* at 5. There is no citation of any policy provision that uses the phrase "water intrusion," or that otherwise links water intrusion and deteriorated wood framing to the language of the policy, and no explanation of why "long-term water intrusion and

5

deteriorated wood framing" are not covered losses. The narrative does not address at all the question of coverage or exclusion under the collapse provisions.

Moreover, some of the provisions set forth in the letter were not even part of the policy; several had been deleted and superseded by policy amendments or endorsements. Others patently do not apply to the breezeway collapse at issue, such as those citing flood or steam boilers, and the wrong provision governing collapse was included. The Philadelphia employees who drafted and then reviewed the letter admitted as much. *See, e.g.*, Doc. 34-15 at 9–11 (steam boilers), 16–17 (at least two provisions cited in letter were replaced by other language), 17–18 (flood), 26-27 (incorrect collapse provision); Doc. 34-1 at 8 (flood "had nothing to do with the claim"), 17 (steam boilers).

By first agreeing to provide coverage and then issuing a contrary denial letter that includes irrelevant and non-existent policy terms and otherwise does not provide "a reasonable explanation of the basis in the insurance policy in relation to the facts" for its denial of DENC's claim, Philadelphia's conduct had the capacity to deceive DENC and violated N.C. Gen. Stat. § 58-63-15(11)(n). *See Country Club*, 150 N.C. App. at 246–47, 563 S.E.2d at 279–80.

Philadelphia asserts the January 25 letter did not approve coverage, "but rather advises DENC of potential subrogation efforts." Doc. 36 at 11. But it offers no explanation for the letter's first sentence that informs DENC that Philadelphia had issued or would be issuing payment "for damages or injuries sustained" and specifically refers to the claim at issue. Doc. 34-12.

6

As to the second element of a Chapter 75 claim, "the business of insurance" is "unquestionably 'in commerce.'" *Chew v. Progressive Universal Ins. Co.*, No. 5:09–CV–351–FL, 2010 WL 4338352, at *9 & n.3 (E.D.N.C. Oct. 25, 2010) (citing *Pearce v. Am. Defender Life Ins. Co.*, 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986)). Philadelphia does not contend otherwise. Docs. 32, 36, 39.

As to the third element, it is undisputed that Philadelphia did not pay anything on a valid insurance claim submitted by DENC, *see* Doc. 44, so DENC has proven that Philadelphia proximately injured DENC. *See Cullen v. Valley Forge Life Ins. Co.*, 161 N.C. App. 570, 580, 589 S.E.2d 423, 431 (2003) (insurance letter wrongfully denying coverage under § 58-65-15(1) met injury element for § 75-1.1); *cf. Barbour*, 361 F. Supp. 3d at 575 (no injury to § 75-1.1 plaintiff where insurer "ultimately paid the full accidental death benefit with interest"); *Blis Day Spa*, 427 F. Supp. 2d at 635 (no injury where § 75-1.1 plaintiff lacked evidence defendant "ever delayed payments"). While Philadelphia contends DENC has not demonstrated any injury due to § 75-1.1 violations that is "separate from" the damages resulting from Philadelphia's breach of contract, Doc. 36 at 25, such separate or different damages are not required. *Cullen*, 161 N.C. App. at 580, 589 S.E.2d at 431 ("the same injury forming the basis for plaintiff's breach of contract claim . . . is also sufficient for the purposes of an unfair and deceptive practices claim") (citing cases).

DENC is entitled to summary judgment on its Chapter 75 claim based on subsection (n).

## 2. N.C. Gen. Stat. § 58-63-15(11)(a): "Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"

DENC's claim for misrepresentation arises out of Philadelphia's February 19, 2018, denial letter, in which Philadelphia asserts that multiple provisions of the policy apply to bar coverage. Doc. 34-14. It can hardly be doubted that this letter contains misrepresentations that certain provisions bar coverage; it cites to provisions that are not part of or have been deleted from the insurance policy and to provisions that do not apply to the loss at issue. *See* discussion *supra*. Like the policy itself, *see* Doc. 44 at 7–10, the letter is a convoluted mess.

But this is not enough. A § 75-1.1 claim based on a misrepresentation "require[s] a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013). *See Ernst v. N. Am. Co. for Life & Health Ins.*, 245 F. Supp. 3d 680, 686 (M.D.N.C. 2017) (applying rule in insurance coverage case); *Westchester Fire Ins. Co. v. Johnson*, 221 F. Supp. 2d 637, 648–49 (M.D.N.C. 2002) (same). In this context, DENC must show it reasonably and "affirmatively incorporated the alleged misrepresentation into [its] decision-making process: if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether." *Bumpers*, 367 N.C. at 90, 747 S.E.2d at 227. Absent reliance, there is no proximate cause of injury.

DENC has not put forward any evidence of reliance. Its only claim is that it was damaged by Philadelphia's refusal to pay. But that refusal to pay was not caused by DENC's reliance on the denial letter. Lack of payment under an insurance policy may

cause injury, as noted *supra*, but it does not demonstrate reliance. *See Ernst*, 245 F. Supp. 3d at 686–87. Absent any evidence that DENC relied on the misrepresentations to its detriment, summary judgment for Philadelphia on DENC's claim under this subsection is appropriate.

### 3. N.C. Gen. Stat. § 58-63-15(11)(d): "Refusing to pay claims without conducting a reasonable investigation based upon all available information"

It is undisputed that after DENC submitted its claim, Philadelphia promptly retained an adjuster, William Nunn, to evaluate the damage in person, which he did within two days of the reported breezeway collapse. *See* Docs. 32-6, 32-11. Mr. Nunn then retained a structural engineer to visit the building and generate a detailed report about the extent and causes of the damage. Doc. 32-12 at 1; Doc. 32-14. DENC's own retained engineer did not substantively disagree with these findings. *See* Doc. 32-17.

The only evidence DENC identifies in support of this claim is the denial letter and the fact that the writer of the denial letter did not visit the site or interview anyone. Doc. 34 at 20. But Philadelphia retained specialized contractors to do both; it is not unreasonable to rely on others to undertake the needed investigation; and there is nothing to indicate, for example, that the investigators were incompetent or untrustworthy. Although the letter contained multiple confusing and inapplicable exclusions, it remains undisputed that Philadelphia hired appropriate investigators whose work supported Philadelphia's conclusion that there was no coverage under the collapse provision.

DENC has not raised a genuine issue of material fact as to whether Philadelphia acted unreasonably, and thus fairly or deceptively, in conducting the investigation. *See*

9

*Majstorovic*, 2018 WL 1473427, at *6. Philadelphia's motion for summary judgment on this subsection is granted.

### 4. N.C. Gen. Stat. § 58-63-15(11)(g): "Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured"

In *Elliott v. American States Insurance Company*, the defendant underinsured motorist (UIM) carrier refused to pay any money on the plaintiff-insured's UIM claim after she settled with the tortfeasor's insurance company until after the insured won at arbitration. The insured then sued the UIM carrier for Chapter 75 violations, including one based on subsection (g). The Fourth Circuit held that the insured failed to state a Chapter 75 claim based on this subsection, noting that the subsection required that amounts be "due" in order for there to be such a claim, and that "until liability had been determined," a failure to make a settlement offer does not violate the subsection. *Elliott*, 883 F.3d at 398.

Consistent with this, the federal cases applying subsection (g) generally hold that insurers have "a duty to consider settlement of the claim in good faith," but they do not have a duty to settle every claim. *Blis Day Spa*, 427 F. Supp. 2d at 635–36. Nor is it reasonable to interpret the subsection as imposing strict liability on an insurer who refuses to pay a claim later found to be valid. *See Cent. Carolina Bank*, 247 F. Supp. 2d at 801–802. As with any other Chapter 75 claim that involves a breach of contract, some sort of aggravated conduct is required. *Id.*; *see also Prosperity Vill. Townhome Ass'n, Inc. v. State Farm Fire & Cas. Co.*, No. 3:13–cv–00363, 2014 WL 4311498, at *6

(W.D.N.C. Aug. 29, 2014) (looking for "any evidence showing State Farm ever believed the disputed portion of the claim was valid, but disputed it for the purpose of forcing Plaintiff to settle for less than what was owed").

In addition to a requirement that the coverage issue be determined in favor of the insured, the subsection by its terms requires that the insurer offer "substantially less than the amounts ultimately recovered" by the insured before there is a violation. N.C. Gen. Stat. § 58-63-15(11)(g). Here, liability has only recently been determined, and there has as yet been no determination of what amount DENC will ultimately recover. Moreover, if the parties have engaged in settlement negotiations, that evidence is not before the Court; the record does not reflect whether Philadelphia offered any settlement.

Philadelphia's motion for summary judgment is granted as to this subsection, as any claim does not appear to have yet accrued.

### D. Attorney's Fees

DENC has moved for attorney's fees under N.C. Gen. Stat. § 75-16.1(1), Doc. 34 at 26–27, which authorizes such fees for Chapter 75 claims in limited circumstances. While Philadelphia did not address this issue in its briefing, the Court nonetheless concludes that the record needs further development before this issue can be decided.

Before a court can exercise its discretion to award attorney's fees, it must make "specific findings of fact that the actions of the party charged with violating Chapter 75 were willful, that he refused to resolve the matter fully, and that the attorney's fee was reasonable." *Shepard v. Bonita Vista Props., L.P.*, 191 N.C. App. 614, 625–26, 664 S.E.2d 388, 396 (2008), *aff'd*, 363 N.C. 252, 675 S.E.2d 332 (2009); N.C. Gen. Stat. §

75-16.1(1) (requiring a finding of "unwarranted refusal . . . to fully resolve the matter"). DENC does not discuss these legal standards, either generally or in the context of a dispute over insurance coverage, nor does it apply the law to the facts. The record is silent as to any settlement offers Philadelphia may have made along the way, and the Court has limited information about the amount of the covered loss, which will be resolved at trial.

To the extent DENC seeks summary judgment on its claim for attorney's fees, the motion will be denied, without prejudice to a renewed motion made at the conclusion of the trial.

### E. Scope of Damages

In its response to DENC's motion for partial summary judgment, Philadelphia asserts DENC is not entitled to reimbursement for the temporary living expenses of tenants displaced by the breezeway's collapse. Doc. 36 at 26–27. However, DENC did not move for damages to be determined in its motion for partial summary judgment, Doc. 33 at 4 (requesting "damages, to be determined at the proper time"), nor did Philadelphia raise this issue in its own motion for summary judgment. Docs. 32, 39. The scope of damages is not before the Court on summary judgment and will be resolved at trial.

### Conclusion

Philadelphia did not adequately support its motion for summary judgment on DENC's claim for breach of the covenant of good faith and fair dealing, so its motion as to this claim is denied. There are no genuine issues of material fact as to DENC's other extra-contractual claims. DENC is entitled to summary judgment on its claim based on

N.C. Gen. Stat. § 58-63-15(11)(n), as Philadelphia issued conflicting decisions on coverage and failed to provide a reasonable explanation for the denial of coverage that linked the facts to the policy language.  As to the remaining claims, Philadelphia is entitled to summary judgment.  The issue of attorney's fees is deferred until after trial.

It is **ORDERED** that the plaintiff's motion for partial summary judgment, Doc. 33, and the defendant's motion for summary judgment, Doc. 31, are **GRANTED in part and DENIED in part** as follows:

1) Philadelphia's motion for summary judgment, Doc. 31, is **GRANTED** as to the common law bad faith claim and as to the Chapter 75 claim asserting violations of N.C. Gen. Stat. § 58-63-15(11)(a), (d), and (g).  It is **DENIED** as to the breach of the covenant of good faith and fair dealing claim.

2) DENC's motion for partial summary judgment, Doc. 33, is **GRANTED** as to the Chapter 75 claim asserting a violation of § 58-63-15(11)(n), and **DENIED** as to the remaining violations of Chapter 75, and for attorney's fees.  The denial of the motion for attorney's fees is without prejudice.

This the 5th day of December, 2019.

_____
UNITED STATES DISTRICT JUDGE